JOHN JACKMAN, Appellant, v. BISMARCK LOAN & INVESTMENT COMPANY, a Corporation, Respondent.

(199 N. W. 135.)

**Trusts — evidence held to sustain findings for defendant in action to enforce trust and for accounting.**

In an equitable action to enforce a trust and for an accounting, where plaintiff, for purposes of foreclosure, assigned a mortgage to defendant and defendant proceeded to foreclose the same and, upon foreclosure sale and expiration of period or redemption, received a deed therefor, and, where, thereafter, defendant sold the property and accounted to plaintiff only for the proceeds of his mortgage and expenses involved, it is held, for reasons stated in the opinion, that the findings of the trial court to the effect that defendant has duly executed its agreement as trustee should be sustained.

Opinion filed May 21, 1924.

Trusts, 39 Cyc. p. 633 n. 22.

In District Court, Burleigh County, *Jansonius,* J.

Equitable action to enforce a trust and for an accounting.

Plaintiff has appealed from the judgment and has demanded trial de novo.

Affirmed.

*Newton, Dullam & Young,* for appellant.

"A trustee may purchase of his cestui que trust, provided there is a clear and distinct contract ascertained to be such after a jealous and scrupulous examination of all the circumstances, and it is clear that the cestui que trust intended he should buy, and there is no fraud or concealment and no advantage taken by the trustee or information acquired by him as trustee." Story, Eq. Jur. § 445.

"The cardinal principle applicable to a trustee, who has abused his trust, is that the wrongdoer shall derive no benefit for his wrong." May v. Le Claire, 20 L. ed. 50.

"Where one holds property in trust for another and sells the same, he is bound to account for its proceeds to the beneficiary of the trust according to the terms of the trust." Irvine v. Dunham, 111 U. S. 327, 28 L. ed. 444.

"When parties have reduced their contract to writing, it is elementary that in the absence of fraud or mistake, oral evidence is not admissible to vary its terms." Leypoldt v. Wickstrom, 182 N. W. 1015.

"Persons seeking to redeem from a foreclosure sale must comply strictly with the statute which confers upon them the right to redeem." 19 R. C. L. p. 644, § 461.

"The holder of a junior encumbrance waives his right to redeem by purchasing the lands upon the foreclosure of the senior mortgage." Horr v. Herrington, 22 Okla. 590, 98 Pac. 443.

*Zuger & Tillotson,* for respondent.

"Courts, in the construction of contracts, look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. It is therefore an established canon of construction that in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application. And the contract must be so construed as to give it such

effect, and none other, as the parties intended at the time it was made. This rule appears to be applicable only where the terms employed are susceptible of more than one meaning. In such case it is the duty of the court not only to regard the nature of the instrument, but also to inform itself of the circumstances which surrounded the parties at the time, so as to interpret the language employed from the standpoint which the parties occupied when they executed the contract. . . . " 6 R. C. L. p. 849, § 239.

BRONSON, Ch. J. This is an action to enforce a trust and for an accounting. Plaintiff has appealed from a judgment in defendant's favor and has demanded a trial de novo.

The facts, necessary to be stated, are:—Plaintiff is over eighty-five years of age and a pioneer resident of Bismarck. For many years, since 1906 or 1907, he has resided in California, particularly during the winters. Defendant is a loan investment company, allied with the First National Bank, both located in Bismarck. Plaintiff has been acquainted with Mr. Bell, an officer of defendant and the bank, since the latter's boyhood days. Since 1908 plaintiff had business transactions with defendant or the bank through Mr. Bell. These transactions, in part, covered the investment and reinvestment of plaintiff's money in mortgage loans. In particular plaintiff personally made, in 1910, a loan of $2,500 to one, Augusta Little, upon a note dated October 1st, 1910, and due two years after date and secured upon a house and two lots in Bismarck. This loan was kept alive without renewal, while the property was owned by Little, through payments of the annual interest due thereupon. In 1916, the property mortgaged was sold to the Western Sales Company, a partnership, which later, in July, 1917, transferred by deed the property to the Western Sales Company, a corporation. While this note was in force it was left with the Bismarck bank for some time for the collection of interest due thereon. In 1917 or 1918 plaintiff placed this mortgage with Mr. Bell, representing defendant in one capacity and the bank in another, for attention and for collection of interest thereupon. Through the efforts of Mr. Bell interest was collected on this note from the Western Sales Co. up to October 1st, 1918. In 1917 the Western Sales Co. became somewhat heavily indebted to the bank. This indebtedness exceeded $11,-

000. As security for such indebtedness the Western Sales Company gave to such bank a mortgage upon various properties including the house and lots involved in plaintiff's mortgage. Later, in January, 1919, the financial status of the Western Sales Company having become worse, the defendant took over from its allied bank the indebtedness of the Western Sales Company to the bank then amounting to $11,000. In July, 1919, such Western Sales Company gave to defendant a deed to the house and two lots secured by plaintiff's mortgage. Later this Sales Company became a bankrupt. Neither such deed nor such mortgage from the Western Sales Company was ever recorded.

In accordance with plaintiff's testimony, it was necessary for him to return to California in the fall of 1919. He had implicit confidence in Mr. Bell so he talked with him about this Little mortgage. He made arrangements with him to foreclose such mortgage for him through defendant. He knew that the Western Sales Company then owned the property and then he knew that such company was involved in financial difficulties and had not been paying the interest. At that time this Little note and mortgage had been with the First National Bank for some period of time.

Pursuant to Mr. Bell's testimony, plaintiff had several conversations with him concerning his mortgage. Plaintiff knew that defendant had security upon the property inferior to plaintiff's mortgage. Plaintiff expressed some worry about realization of his principal and interest on this mortgage. He expressed a wish for Mr. Bell, through defendant, to handle it for their mutual benefit and help. Plaintiff, on the other hand, in his testimony has expressly denied any knowledge about the possession of any lien or claim by defendant or the bank upon this property until at or about the time of the trial of this action.

In any event, on October 29th, 1919, plaintiff placed with Mr. Bell for defendant his mortgage for foreclosure and at that time a written memorandum was made and given to plaintiff which reads as follows:

"Received of John J. Jackman note and mortgage of Augusta J. Little for $2,500 principal together with assignment from Mr. Jackman in favor of the Bismarck Loan and Investment Company of the mortgage. At his request this mortgage has been assigned to us as he wishes us to attend to the foreclosure thereof which we have agreed to do, having the foreclosure made in our name and in case the property

goes to Sheriff's deed, deed made to the Bismarck Loan and Investment Company, as principal is to be held in trust for Mr. Jackman until the mortgage is paid or until he wishes us to re-deed it to him or to such persons as he may direct."

Plaintiff, before he left for California, had spoken to a local attorney concerning the foreclosure of this mortgage. Mr. Bell accordingly placed this mortgage with such attorney for foreclosure. The foreclosure proceeded. On February 14th, 1920, the foreclosure sale was had and sheriff's certificate issued to defendant, as purchaser at the sale, for the sum of $2,823.19. On March 30th, 1920, Mr. Bell wrote plaintiff in California to the effect that the foreclosure was proceeding and sheriff's certificate would be issued shortly. In October, 1920, plaintiff wrote Mr. Bell inquiring about the mortgage, when he would get his money out of it, and whether Bell was in possession of the property. In response to this letter Bell wrote plaintiff, on Nov. 1st, to the effect that the foreclosure would not pass to sheriff's deed for some time and that he thought that shortly thereafter that occurred they could arrange to have it turned into cash for plaintiff. Also he wrote, "As I understand, you do not wish the property but wish to realize on the mortgage." During the course of the foreclosure proceedings and before the year of redemption expired, the local attorney foreclosing the mortgage knew that defendant possessed junior liens on the property. Bell consulted his attorney about the necessity of defendant, which already had title through sheriff's certificate, redeeming upon its junior liens from itself. He was advised that this was a useless ceremony and not necessary. Neither defendant nor anyone else redeemed. Sheriff's deed was issued on April 23d, 1921, to defendant. On February 16th, 1921, Bell wrote to plaintiff to the effect that the foreclosure proceedings would permit of the issuing of a sheriff's deed the latter part of April so nothing could be done in that connection until then. Bell, in his testimony, explains the error in the time by the statement that he had overlooked or failed to recollect the exact time of the expiration of the right of redemption.

During the course of these foreclosure proceedings the costs and expenses thereof were charged to, and paid by, plaintiff through his account at the Bank.

In May, 1921, defendant sold this house and two lots upon a contract

for a deed for an expressed consideration of $6,000, payable $1,200 in cash and the balance, $60 per month, monthly, commencing May 1st, 1921. The consideration of $1,200 in cash was paid by Hagen through a mortgage upon land in Oliver county, North Dakota. Pursuant to this sale, so made, Bell, on May 10th, 1921, wrote plaintiff in California to the effect that they were in a position to take care of the Little property indebtedness and that the entire transaction had been finally consummated; also, that they had credited his account with $3,420 representing the loan, taxes paid, and foreclosure expenses; that they had reinvested for him $1,200 in the Hagen mortgage and another $2,500 upon some city property in Bismarck. Then, pursuant to later correspondence, plaintiff made some inquires concerning the settlement on the Little property and in some respects apparently made complaint of the settlement so made. In response Bell explained by stating that after the period of redemption had expired they proceeded to make arrangements to secure for plaintiff the money due him in full on the property as they had agreed to do and to which plaintiff had assented. Also statement was made to the effect that the sheriff's certificate drew only 6 per cent interest. It appears an error was made in this respect and later Bell credited plaintiff with an extra 2 per cent, namely, at the 8 per cent rate for interest accruing during the period of redemption. Later, it appears that plaintiff made some inquiries from a local friend and learned that the property had been sold by defendant and, as he claims, entirely without his knowledge. Later, he returned to Bismarck and after conferences with Bell was unable to secure any adjustment. In the evidence it appears that plaintiff has retained the moneys paid to him by defendant upon this mortgage foreclosure; that Hagen, on the contract of sale for $6,000 has made payments of $1,200 and monthly payments aggregating $720.00 and since such payments the contract has been in default.

Thus, this action has resulted. In the complaint plaintiff alleges the trust agreement and its violation by defendant. He seeks to secure from defendant an accounting and a determination of the amount due him from defendant. Defendant, in its answer, relies upon its performance of the trust imposed pursuant to the agreement and understanding of the parties; and upon the fact of the payment to plaintiff of the amount due him; and of its reception and retention by him.

The trial court found, among other things, that plaintiff assigned this Little mortgage to defendant for collection and that all he wanted or expected was the money due him thereupon; that the defendant accepted the agreement made in good faith, with such understanding, intending to obtain payment of plaintiff's mortgage and then to apply any over-plus or excess that might be in the property upon its subsequent lien claim; that plaintiff foreclosed such mortgage, secured a sheriff's deed in its own name and, after sale of the property, accounted and paid to the plaintiff the full amount of his mortgage; that plaintiff received, accepted, and has ever since retained such payment; that defendant, being a redemptioner with a lien subsequent to plaintiff's mortgage, lawfully applied the over-plus of same on its lien. Accordingly, the trial court ordered the action to be dismissed.

In a memorandum opinion the trial court stated, in part, that oral evidence was properly received to explain the trust agreement as made and to explain ambiguity and uncertainty therein contained; that the parties, through the confidence and close friendship that had existed between them, conducted their business with informality; that plaintiff, when he placed this note and mortgage in defendant's hands desired and expected only his money and that defendant thought that plaintiff fully understood that he had a second mortgage and was a large creditor of the Western Sales Company; that they proceeded accordingly, with the attorney, to foreclose the mortgage; that the reason why defendant did not redeem was through the assurance conveyed by the local attorney, and further, that it was unnecessary.

## Opinion.

Both parties concede the execution of a trust agreement and the creation of a trust relation. The only question involved concerns the interpretation to be placed upon this trust agreement and relation and the fact of its execution by defendant. Pursuant to plaintiff's contentions, defendant was bound, after the foreclosure sale and the failure to redeem, to transfer the property to plaintiff or to account for the sale price thereof; further that this trust agreement in writing could not be explained by oral testimony concerning its provisions or concerning the relations of the parties. Defendant, on the other hand, maintains that this trust agreement can be understood only in the light of an

understanding of the relation of the parties and of their acts towards each other, both anterior and posterior to the execution of the written agreement; that furthermore, defendant has executed its trust pursuant to the agreement and in accordance with the understanding had and the agreement made.

A sharp conflict in the testimony exists between the parties. The trial court has resolved, through his findings, the disputed questions of fact in defendant's favor. The question of fact whether plaintiff knew of the junior liens and claims of defendant upon this property when he transferred his mortgage and created the trust was important. The intimate confidential relation existing between the parties theretofore is admitted. The determination of this question of fact threw direct light upon the trust relation and the provisions of the trust agreement. Oral evidence in this regard served to present an understanding of the trust agreement which otherwise might appear ambiguous or contrary in its terms. The provisions of the trust agreement to the effect that "in case the property goes to sheriff's deed, the deed made to the Bismarck Loan Investment Co. as principal, is to be held in trust for Mr. Jackman until the mortgage is paid or until he wishes us to re-deed it to him or to such persons as he may direct," was well subject to an interpretation that defendant was entitled, even after the period of redemption had expired, to pay to Mr. Jackman the amount of his mortgage and expenses in consummation and execution of the trust. Such interpretation did no violence to plaintiff's rights, if defendant's testimony be recognized. Defendant, holding junior encumbrances, if it had dealt with plaintiff at arm's length, could easily have redeemed, and secured for itself exactly what it did secure without the assumption of any duty as trustee, gratuitously. Plaintiff now seeks, by reason of his lack of knowledge or misunderstanding concerning defendant's claims, to compel defendant to sacrifice all of its junior rights theretofore possessed and to pay the amount thereof to plaintiff in excess of the amount due upon the foreclosure. We are satisfied that the trial court properly received the oral testimony. Upon a review of the entire record we are of the opinion that its findings should be sustained. Upon such findings, defendant executed its trust pursuant to the agreement. The judgment is affirmed with costs.

BIRDZELL, NUESSLE, JOHNSON, and CHRISTIANSON, JJ., concur.